VICKSBURG, S. & P. RY. CO. v. JACKSON.

(Court of Civil Appeals of Texas. Jan. 7, 1911. Rehearing Denied Jan. 28, 1911.)

1. CARRIERS (§ 287*)—CARRIAGE OF PASSENGERS — TAKING UP PASSENGERS — CARE REQUIRED.

A brakeman who undertook to assist a passenger to board the train was bound to ·exercise toward her that high degree of care that would have been exercised by a very competent, cautious, and prudent person, under the same circumstances.

[Ed. Note.—For other cases, see Carriers, ·Cent. Dig. §§ 1154–1166; Dec. Dig. § 287.*]

2. CARRIERS (§ 318*)—CARRIAGE OF PASSENGERS — PERSONAL INJURIES — PROXIMATE CAUSE.

Evidence that a brakeman, who undertook to assist a passenger to board the train, released his hold of her arm after she placed her foot upon the step before she could get · her balance, and as she fell back caught her in the small of the back, causing assault and seri-·ous injuries, was sufficient to justify a finding that such injuries, or similar ones, might rea-·sonably have been anticipated as a probable result of the act.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 318.*]

3. CARRIERS (§ 305*)—CARRIAGE OF PASSENGERS — PERSONAL INJURY — PROXIMATE CAUSE.

To authorize a recovery by a passenger for ·personal injuries, it is not necessary that the ·exact injuries received should have been foreseen as a probable result of the negligent act of ·the carrier's servant, but only that a reason-

ably prudent man, in view of all the facts, would have anticipated some like injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1132, 1136–1139, 1245–1246; Dec. Dig. § 305.*]

4. TRIAL (§ 261*)—INSTRUCTIONS—REQUEST → ERRONEOUS REQUEST.

Where the court charged that before the jury find for plaintiff they must find that the negligence of the defendant's servant was the proximate cause of the injuries suffered, it was not the duty of the court to correct an inaccurate requested charge as to proximate cause, and reduce it to proper form, nor to prepare a correct one, though the requested charge may have been sufficient to direct the attention of the court to the question involved.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 660, 671, 675; Dec. Dig. § 261.*]

5. DAMAGES (§ 208*)—QUESTIONS FOR JURY→ MENTAL SUFFERING.

In an action for injuries to a passenger, evidence that she suffered from severe bearing down pains and excessive menstrual flow, and that she was probably injured internally to an unknown extent, was sufficient to authorize submission to the jury of mental suffering as an element of damages.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 208.*]

6. CARRIERS (§ 318*)—CARRIAGE OF PASSENGERS—PERSONAL INJURIES—EVIDENCE—SUFFICIENCY.

In an action for injuries to a passenger, evidence held to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307–1314; Dec. Dig. § 318.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by T. J. Jackson against the Vicksburg, Shreveport & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Etheridge & McCormick and A. J. Clopton, for appellant. Carden, Starling, Carden & Hemphill, for appellee.

TALBOT, J. Appellee, Jackson, instituted this suit in the district court of Dallas county, Tex., to recover damages in the sum of $1,999 for personal injuries received by his wife through the negligence of appellant's employés, while assisting her to board one of appellant's passenger trains at Raysville, La., on March 29, 1909. The petition alleged, in substance, and the evidence was sufficient to show, the following state of facts: On the 29th day of March, 1908, the plaintiff and his wife, Mrs. Emma Jackson, were at Natchez, Miss., where they took passage by rail for Dallas, Tex. They each held through tickets from the said city of Natchez to the said city of Dallas. From the town of Raysville, La., to the city of Shreveport, La., their tickets were for transportation over the railroad of the defendant. When plaintiff and his wife reached Raysville, they went to defendant's depot there, and, when its train arrived en route to Shreveport, they undertook to get aboard said train, as in-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

structed by defendant's servants in charge thereof. There was no platform at the place where plaintiff and his wife boarded the train; a footstool about 12 inches high being used, upon which passengers were directed to step in getting on the train. When Mrs. Jackson stepped upon the footstool to board the train, one of defendant's servants, a brakeman, took hold of her arm to assist her upon said train. Said brakeman held to Mrs. Jackson's arm until she had placed her foot upon the bottom step of the car; but, before she was able to raise herself up and get safely balanced upon the step, the brakeman released his hold of her arm, which caused her to fall backwards, and as she so fell the brakeman caught her with both hands in the small of the back, and, by reason of the force of the fall and the catching of her by defendant's servant in the manner in which it was done, she was painfully and seriously injured, substantially in all or some of the ways alleged in plaintiff's petition. The brakeman, in releasing his hold of Mrs. Jackson's arm and catching her in the back, was guilty of negligence which proximately resulted in the injuries which she sustained. In 1905 or 1906, Mrs. Jackson suffered a miscarriage caused by a blow in her left side from a piece of machinery with which she was working in a cotton mill. Subsequently, in April, 1907, or a little less than a year prior to the alleged injury made the basis of this suit, she was affected with an enlargement and flooding of the womb, and because of which an operation was performed upon her womb; but at the time of the accident in question she had recovered and was a strong and healthy young woman. The defendant pleaded a general demurrer and a general denial. A jury trial resulted in a verdict and judgment in favor of the plaintiff for the sum of $250, and the defendant appealed.

The first assignment of error complains of the court's refusal to give a special charge requested by the defendant directing the jury to return a verdict in its favor. The proposition under this assignment is: "The testimony, including the reasonable inferences therefrom, is insufficient to show an act of the defendant of which the injuries of the plaintiff's wife were the natural and probable consequences, which ought to have been foreseen by the defendant's agent in the light of the attending circumstances." We do not concur in this view of the testimony. Having undertaken to assist Mrs. Jackson to board the train, it became the duty of appellant's servant, who attempted to perform this service, to exercise toward her that high degree of care that would have been exercised by a very competent, cautious, and prudent person under the same circumstances; and if the testimony did not indisputably show that Mrs. Jackson's injuries were the natural and probable consequences of the alleged negligent acts of appellant's servant, which ought to have been foreseen by him, it was suffi-

cient to justify a finding that such or similar injuries might reasonably have been anticipated as a probable result of said acts. The court would not have been warranted in telling the jury, as a matter of law arising upon the facts, that the injury sustained by appellee's wife, or no similar injury, could have been foreseen as the natural and probable consequences of appellant's negligence. The peremptory charge was therefore properly refused.

Appellant's second assignment of error complains of the court's refusal to give the following charge requested by it, namely: "You are charged that before the plaintiff can recover for any injuries resulting to his wife from the negligent acts of this defendant, if you find that there was negligence, you must find and believe from a preponderance of the evidence that such injuries resulted proximately as the natural and probable consequences, reasonably to be foreseen as the probable result of such acts of the defendant's agent, and the plaintiff cannot recover for the possible result thereof." We are of the opinion there was no error in this ruling of the court. If it should be conceded, which is not done, that the evidence called for an instruction upon the subject of this charge, the same was erroneous, in that it required the jury to find, in order to return a verdict in favor of the plaintiff, that the exact injury or injuries received by appellee's wife must have been foreseen as the probable result of the negligent acts of the appellant's servant. The test is whether a reasonably prudent man, in view of all the facts, would have anticipated, not necessarily the precise actual injury, but some like injury. Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Railway Co. v. Barrett, 46 Tex. Civ. App. 14, 101 S. W. 1025; Bering Mfg. Co. v. Peterson, 28 Tex. Civ. App. 194, 67 S. W. 133. In Bering Mfg. Co. v. Peterson, supra, after announcing the rule substantially as above stated, it was held that, had the court instructed the jury that the exact injury complained of must have been foreseen as a probable result of the negligence charged, as requested, such instruction would have been error.

It is said in the brief "that it was clearly the duty of the court to give the requested charge or some other of an equivalent nature." To this contention the answer is that, the trial court having charged the jury generally to the effect that before they could find for the plaintiff they must find that the negligence of the appellant's servant was the proximate result of the injuries suffered by appellee's wife, it was not the duty of the court to correct the inaccurate requested charge, and reduce it to proper form, or to prepare altogether himself a correct one upon the subject, and give it in charge to the jury, although the imperfect requested charge may have been sufficient to direct the attention of the court to the question involved.

Railway Co. v. Minter, 42 Tex. Civ. App. 235, 93 S. W. 516.

It is also assigned that the court erred in refusing the following special charge, requested by the appellant: "If you find from the evidence that defendant's flagman let go Mrs. Jackson's arm, and that, in so doing, was guilty of negligence, as that term is defined in the charge, you will find for the defendant, unless you further find that said flagman should have foreseen, in the light of attending circumstances, that Mrs. Jackson would probably receive injuries if he let go her arm when he did, if you find that he let go her arm." There was no error in refusing this charge. If appellee's wife sustained the injuries alleged as a result of the negligent acts of appellant's servant, and the jury, upon testimony sufficient to justify it, has found that she did, then we think it appears beyond controversy that such injuries were the natural and probable consequence of such acts, and the special charge was not called for by the evidence. To have submitted, under the circumstances, the question whether or not the servant guilty of the acts complained of ought to have foreseen the result thereof, as a controverted issue, would have been misleading. "The injurious, proximate, and natural consequences of an act of negligence are always deemed to be foreseen." Railway Co. v. Barrett, supra. It may be added that the special charge in question is not the equivalent of an instruction telling the jury that if the condition of Mrs. Jackson's female organs were the recurrence of former affections with which she had suffered, or the result of former injuries received, and not due to the alleged acts of negligence on the part of appellant's servant, to find for the appellant, and the record does not show that any such charge was asked; nor was there any intervening cause to which the injuries of Mrs. Jackson could be attributed. The court did, however, instruct the jury to the effect that, if the "plaintiff's wife did not suffer the injuries complained of as the direct result of the negligence of appellant's servant, to return a verdict for the defendant." We are of the opinion the court did not, as contended under this assignment, commit reversible error in failing to define "proximate cause" in his general charge. Such error, if error at all, was one of omission and should have been cured by a correct special charge requested by appellant.

The fourth assignment complains that the court erred in submitting, as an element of damages, the mental suffering of the appellee's wife. It is said that this was error because there was no proof of such suffering. We think the character of Mrs. Jackson's injuries were such as to authorize the inference of mental suffering. There was evidence that she suffered from severe bearing down pains, excessive menstrual flow, and that she was probably internally injured, the extent of which was unknown. She testified: "When I got on the car, I just felt weak and nervous, all over, and started to having pains in the small of my back, which lasted all night from that on. I never slept all that night, and I was about in the same condition until I got to Shreveport, and after that I got worse. We got to Shreveport about 3 o'clock in the afternoon and left about 11 o'clock that night. While I was in Shreveport, I was hurting and didn't do anything but sit down and get up and walk around. I had no place to rest. I was suffering right in the small of my back and in my womb, at Shreveport. We got to Dallas at 7 o'clock the next morning. Between Shreveport and Dallas, I hurt awfully, and couldn't sit still hardly at all. I hurt worse after I left Shreveport. On this train, my menstruation came on after I had missed five weeks." Dr. Nicholson testified: "I know Mrs. Jackson. She conferred with me professionally in the first week in April, 1908. I made an examination of her pelvic organs, the womb in particular. I found her womb in what we call a retroverted situation. The normal situation of the uterus lies forward on the bladder, and in this condition the womb was turned back. That produces tension in the ligaments and causes what we call bearing down pains. There was no adhesion; the womb was movable in that position. If the womb had remained in that position a long time, there would have been adhesion; but the main thing she complained of was the bladder. She complained a great deal of frequent urination, and, of course, all symptoms pointed to inflammation of the bladder."

Our conclusion is that the verdict of the jury is sustained by the evidence, and that no substantial injury has resulted to appellant by any ruling of the court of which complaint is made.

The judgment of the court below is therefore affirmed.